CRESSWELL v. ROBERTSON.

BUILDING CONTRACTS — CONSTRUCTION — INJURIES TO WORK — RE-
PLACEMENT—EXTRAS.

A subcontractors' contract provided that they should cover,
protect, and secure the work from injury; that any damage
thereto should be repaired at their expense, and that the in-
spection of any work by the architects, or the issuance of cer-
tificate thereon by them, or payments under the contract,
should not release the subcontractors from any obligation to
perform the work in a good and workmanlike manner, and
any default or defect in the same, with all damages thereto,
should be repaired and replaced or made good by the subcon-
tractors at their own cost and expense. *Held*, that where
water-conductor pipes were placed within four inches of the
outside face of the wall, as provided by the plans and specifi-
cations, and were accepted after being tested, but they were
subsequently damaged by frost because of the failure of other
contractors to supply steam with which to warm them as
contemplated, whereupon the architects ordered new pipes
inserted in another location, the subcontractors were not re-
quired to insert such pipes under the contract, but were en-
titled to charge therefor as extras.

Error to Wayne; Frazer, J.   Submitted January 18,
1905.   (Docket No. 63.)   Decided March 21, 1905.

Assumpsit by James L. Cresswell and Frank A. Hesse,
copartners as the Detroit Cornice & Slate Company,
against Robert Robertson for work and labor done.   There
was judgment for plaintiffs on a verdict directed by the
court, and defendant brings error.   Affirmed.

*Angell, Boynton, McMillan & Bodman,* for appellant.
*Lodge, Trevor & Brown,* for appellees.

BLAIR, J.   This is an action brought by the appellees
against the appellant to recover the final payment claimed
to be due under a contract between them.   The defendant

was the principal contractor for the erection of the Wayne county building at Detroit. He entered into an elaborate written contract with the county, which contained various clauses bearing upon the questions involved in this case. The plaintiffs were subcontractors under the defendant for a portion of the work covered by his contract with the county, viz., the portion covering roofing and metal work. The plaintiffs entered into a written contract with the defendant, covering this work, the clauses of which, so far as they affect the questions involved in this case, are identical in language with the clauses contained in the contract between the defendant, Robertson, and the county.

The plans called for the placing of iron water-conductor pipes in the outer walls, and four inches from the outside face thereof, of that portion of the building which surrounds the interior courts. The Detroit Cornice & Slate Company (plaintiffs) was the subcontractor in whose department this work fell. The plans required that the work of installing the pipes should go on as the outer brick walls went up, and this course was pursued, with the result that when the wall was finished the pipes were completely incased in brickwork. The work of installing the pipes, including making of connections near the roof, was completed about the month of October, 1899, when the work was subjected to a rigid test by allowing water to pass down into the pipes from the roof, and no defect was found, and none existed. The work was completely finished in accordance with the specifications. The plans and specifications contemplated that an opening should be left in the conductor pipe near the ceiling of the basement, into which a steam pipe should be introduced so as to allow steam to be discharged into the pipe for the purpose of warming the conductors in freezing weather. The proper opening was left for this purpose in each conductor pipe. As these conductor pipes were placed, according to the plans, within about four inches of the outside face of the wall, the heating of them as proposed was an essential safeguard in cold weather. For some reason, not disclosed

139 Mich.—27.

by the record, for which none of the parties to the suit was responsible, the apparatus to supply steam to the building was not in working order or put into operation until late in March or early in April, 1900. In the meantime, and probably during a period of heavy snows in January and February of 1900, the conductor pipes became filled with ice, and many of them were bursted and broken. After the bursting of the pipes, and some time in the spring of 1900, the architects directed defendant, Robertson, to cut from the inside of the building through some 20 inches of brickwork to reach each pipe in its then location, and to cut another slot on the inside of the wall, and to put new pipe in this new location, where some 20 inches of brickwork would be between the pipe and the outside air. Some of these pipes were, however, removed to the elevator shafts of the building, instead of being set in the brickwork, as last stated. After Robertson had been instructed to replace the pipes, he, in his turn, ordered the plaintiffs to replace them, which order plaintiffs refused to obey unless they were paid for so doing, whereupon Robertson caused the work to be done by others at his own expense. The plaintiffs did, however, make the roof connections to the pipes in the new location, putting in what are called in the record "goose necks;" and for this work they made a charge against Robertson, as for an extra, of $150.50. It appeared that to replace the pipes in their original location would have cost $1,408.56, and that the change in the plans made an additional expense of about $800.

The facts were undisputed, and at the close of the testimony the circuit judge directed a verdict in favor of the plaintiffs for the full amount of their claim. Defendant assigns as error the directing of the verdict, and the refusal of the court to give defendant's single request to charge—that, under the testimony in the case, the defendant was entitled to a set-off, as against the claim of the plaintiffs, in the amount of $1,408.56, with interest from the time of the completion of the building. Defendant's counsel contend that, as between the county and Mr. Rob-

ertson, the county had the legal right to insist that any damage happening to the work after its completion, and before the final acceptance of the work, should be replaced at his expense, no matter what the cause of the damage was, and that, although the cause might be bad plans made by the architect, this did not alter his responsibility. They also contend that the subcontractors under these same clauses were similarly liable to Mr. Robertson for the expense to which he was put in making good the damages to the county.

In the course of his instructions to the jury, directing a verdict for the plaintiff, the trial judge said:

"Now, when application was made to the plaintiff by the defendant to alter this pipe—to put it in a different place, as directed by the architect—he refused to do it; claiming that he had completed his contract according to the terms of the contract, and according to the plans and specifications. It is my opinion that, having complied with his contract, there was no law that could require him to make this alteration, without he was paid for it. If it had been any neglect on his part—any failure to comply with the original plans and specifications—it would have been different; but it is conceded that there is nothing of that kind, but that the architect came along and ordered this changed; and it is claimed he had a right to make it, under the original contract between the county and the defendant in this suit, the general contractor. I do not so interpret that contract at all. I do not think that the architect had a right, under that contract, to arbitrarily change the plans, and expect to make the workmen—the persons who had taken these contracts—pay for it out of their own pockets. If they saw fit to change the plans—and having found there was a defect in them—and to put this pipe further away from the outside wall, to prevent freezing, it was to be done at the expense of the owners of the building, and not at the expense of the contractors. The work having been performed, this general contractor was under no liability, and there was no authority to make Mr. Robertson make it in this way; but they went on and made it, and it has been paid for."

We fully agree with the trial judge in his interpretation of the contract. All of these contractors had executed

their contracts in exact compliance with the plans and specifications; their work had been finished, tested, and found satisfactory; and they were in no wise responsible for the neglect of others in not installing the steam heating apparatus, nor for the placing of the pipes four inches from the outside, where they were likely to freeze.

The construction of the contract by the appellant, whereby the contractors could be required by the arbitrary action of the architect to do their work over again without compensation, is so harsh and unjust that it should only be adopted in case the provisions of the contract are so clear and certain in their meaning as to admit of no other rational conclusion. The clauses of the contract upon which counsel for appellant rely in their brief are the following:

"3rd. Should any alterations be required in the work shown or described by the drawings or specifications, the quantities for such alterations either as additions to or deductions from the work, shall be made by the architects, and the prices for same shall be in accordance with the prices named in the proposal submitted by these contractors. Said proposal is attached to this contract.

"4th. The contractors shall, within twenty-four (24) hours after receiving written notice from the architects to that effect, proceed to remove from the grounds all materials condemned by them, whether worked or unworked, or take down all portions of the work which the architects shall condemn as unsound or improper, or as in any way failing to conform to the drawings and specifications, and to the conditions of this contract. The contractors shall permit the owners and architects to visit and inspect the said work or any part thereof, at all times and places during the progress of the same, and shall provide sufficient, safe and proper facilities for such inspection.    *    *    *

"6th. Should the contractors be obstructed or delayed in the prosecution of the work by the neglect, delay, or default of any other contractors, or by an alteration that may be required in the said work, or by any damage which may happen thereto by fire, or by the unusual action of the elements, or by the abandonment of the work by the employés through no fault of the contractors, then

there shall be an allowance of additional time beyond date set for the completion of said work; but no such allowance shall be made unless the claim is presented in writing at the time of such obstruction or delay. The architects shall award and certify the amount of additional time to be allowed, in which case the contractors shall be released from the payment of the stipulated damages for the additional time so certified and no more.  *  *  *

" 8th. The contractors shall make no claim for additional work, unless the same shall be done in pursuance of an order from the parties of the second part, and notice of all claims shall be made to the parties of the second part, in writing, within ten (10) days of the beginning of such work.  *  *  *

" 10th. The contractors shall cover, protect, and secure the work from injury, any damage happening thereto shall be repaired, replaced, or made good by said contractors.  The contractors shall be responsible for any harm or injury which may happen to any person or persons on or about the building by reason of any act or default of said contractors, their subcontractors, employés, or agents. The contractors shall pay to the parties of the second part all costs which the said parties of the second part may incur by reason of said harm or injury.  *  *  *

" 14th. It is mutually further agreed by the parties hereto, that the inspection of any work by the architects or the issuance of certificate thereon by them, or payments made by the parties of the second part, under this contract, shall not release the contractors from any obligation to perform the work in a good and workmanlike manner, and in case of any default or defects being found at any time, either in workmanship or materials, the same, with all damages due thereto, shall be repaired, replaced, or made good by the contractors at their own cost and expense."

The tenth clause seems to be the one upon which appellant principally relies as supporting his construction of the contract, and is the only clause, in our opinion, which affords a plausible basis for such construction.  It is his view that that clause required the contractors to protect the work against injury, and to repair, replace, or make good any damage from any cause occurring before the ac-

ceptance of the work by the county. We do not think this view should prevail as to the plaintiff's contract, whatever may be the construction of the clause in defendant's contract with the county. So far as plaintiff's contract is concerned, we think this clause meant that he should cover, protect, and secure the work from injury, and should repair, replace, and make good any damage happening during the progress of the work, and before its final completion in accordance with his contract, while he was still in charge of and responsible for the particular work. To hold that the subcontractor should be held responsible for the negligence of others causing damage months after he had completed his work, which had been tested and accepted by the principal contractor as satisfactory, and which, as a matter of fact, complied in every detail and circumstance with the plans and specifications, would, in our opinion, be unreasonable and unwarranted by the clause in question.

The fourteenth clause manifestly has no application, since the plaintiff performed his work in a good and workmanlike manner, and there were no defaults or defects found at any time either in workmanship or materials.

We think that the trial court adopted the correct view of the contract between the parties, and the judgment is affirmed, with costs.

McALVAY, GRANT, MONTGOMERY, and OSTRANDER, JJ., concurred.